## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

RYAN LORD,

      Plaintiff,

      v.

No. 09 CV 4469
Judge James B. Zagel

HIGH VOLTAGE SOFTWARE, INC.,

      Defendant.

## MEMORANDUM OPINION AND ORDER

### I. BACKGROUND

In his Second Amended Complaint, Plaintiff Ryan Lord ("Lord") brings suit against his

former employer, Defendant High Voltage Software, Inc. ("High Voltage"), alleging sex

discrimination and retaliation pursuant to Title VII of the Civil Rights Act of 1964 ("Title VII"),

42 U.S.C. § 2000(e) et seq., violations of the Americans with Disabilities Act ("ADA"), 42

U.S.C. § 1201 et seq., and retaliation thereunder. Defendant now moves to dismiss the ADA

claims. For the following reasons, Defendant's motion is granted in part and denied in part.

### II. STATEMENT OF FACTS

In January 2007, while Plaintiff was employed as an assistant/associate producer at High

Voltage, he began working with a female audio engineer. Plaintiff claims that several of his

coworkers, including his immediate supervisor Joshua VanVeld ("VanVeld"), began making

sexually inappropriate remarks to him about his relationship with the engineer. In April 2007,

after an unsuccessful appeal to his co-workers to stop the comments, Plaintiff complained to

Chad Kent, VanVeld's supervisor, about the harassment. Kent indicated that he would raise the

issue with VanVeld, and subsequently did so, revealing to VanVeld that Plaintiff had made a complaint of sexual harassment against him.

Plaintiff alleges that he had always been a good employee, but that following this discussion, VanVeld began to watch Plaintiff more closely and criticize his work. On June 5, 2007, Plaintiff approached Human Resources Director Maggie Bohlen to discuss VanVeld's treatment of him. Bohlen indicated that she had not been informed by Kent of a sexual harassment complaint. During this conversation, Plaintiff had a panic attack and was hospitalized as a result.

The following day, Plaintiff was reassigned to a different team, where he reported directly to Kent. On June 11, 2007, Bohlen reported to Plaintiff that she had conducted an investigation of his sexual harassment claims and had concluded that no harassment had taken place. Plaintiff submitted a written response, but Bohlen refused to include it in the investigation or Plaintiff's employment file.

On June 19, 2007, in what Plaintiff refers to as a "performance review," he was told that if he encountered any harassment, he should ask the harasser to stop. If the harassment continued, Plaintiff was to immediately alert his supervisor. Plaintiff alleges that on July 18, 2007, he was poked in the buttocks by a co-worker. After Plaintiff told the co-worker to stop, the co-worker responded that Plaintiff enjoyed it. The following day, Plaintiff informed Kent about the incident. Kent responded that Plaintiff was too involved in the activities of other employees, and that if this continued, Plaintiff would be terminated. Kent refused to allow Plaintiff to make any type of complaint.

2

On July 23, 2007, the same co-worker slapped Plaintiff on the buttocks in the presence of others. Plaintiff told the co-worker to stop. On July 25, the same co-worker repeated the incident, and Plaintiff again told the co-worker to stop. On July 27, the same co-worker grabbed Plaintiff between his legs, and Plaintiff once more told him to cease the behavior. During this time Kent was out of the office, and Plaintiff was unable to report the incidents to him. Moreover, Kent's previous threat to terminate Plaintiff made him hesitant to do so.

On July 30, 2007, Plaintiff questioned certain employees who were witnesses to the harassment. After seeing Plaintiff speaking to the others, Kent summoned Plaintiff outside and began to question Plaintiff about his health conditions and medical appointments that had caused him to take time off. Kent told Plaintiff to keep him and the company president informed of his medical conditions.

In his Second Amended Complaint, Plaintiff claims to suffer from diagnosed anxiety, panic disorder with agoraphobia, and depression. He claims that these "diagnosed impairments have affected his ability to work at Defendant High Voltage Software, Inc. and the impairments were known to the Defendant" as of his July 30 conversation with Kent. Plaintiff asserts that Defendant regarded him as disabled and adjusted his schedule and job accordingly.

Subsequent to the conversation with Kent, Plaintiff spoke to Bohlen about the recent incidents of harassment. He also explained that he was hesitant to speak to his immediate supervisor as a result of the threat of termination. After asking Plaintiff to record the incidents in an e-mail, she indicated that she would speak to Kent and the company president about the harassment.

3

At this point in the allegations, the situation quickly begins to deteriorate. On July 30, Kent wrote Plaintiff up for an incident for which Plaintiff disclaimed responsibility. The write up was withdrawn after Plaintiff "expressed that he felt that his rights were being violated and that he would consider seeking the assistance of the [Equal Employment Opportunity Commission] or the Illinois Department of Human Rights." That same day, Plaintiff began receiving threatening phone calls and text messages on his cell phone from the co-worker who had harassed him. When Plaintiff reported this to Kent, Kent said he would schedule a meeting to discuss it, and expressed his displeasure that Plaintiff had gone to Bohlen instead of him. On August 1, 2007, Plaintiff was terminated on the grounds that he waited too long to notify Bohlen of the harassment and that he was "insubordinate" for making accusations of retaliation against the company. According to Plaintiff, Bohlen told him that his threat to seek the assistance of the Equal Employment Opportunity Commission ["EEOC"] or the Illinois Department of Human Rights ["IDHR"] was inappropriate.

In his Second Amended Complaint, Plaintiff alleges sex discrimination and retaliation pursuant to Title VII, and discrimination and retaliation under the ADA. Defendant now moves to dismiss the ADA claims pursuant to Federal Rule of Civil Procedure 12(b)(6). For the following reasons, Defendant's motion is granted in part and denied in part.

## III. STANDARD OF REVIEW

A Motion to Dismiss under Rule 12(b)(6) requires that I analyze the legal sufficiency of the complaint, and not the factual merits of the case. *Autry v. Northwest Premium Servs., Inc.*, 144 F.3d 1037, 1039 (7th Cir.1998). I must take all facts alleged in Plaintiff's complaint as true and draw all reasonable inferences from those facts in favor of Plaintiff. *Caldwell v. City of*

4

*Elwood*, 959 F.2d 670, 671 (7th Cir.1992). Plaintiff, for his part, must do more than solely recite the elements for a violation; he must plead with sufficient particularity so that their right to relief is more than a mere conjecture. *Bell Atl., Corp. v. Twombly*, 550 U.S. 544, 555 (2007). Plaintiff must plead his facts so that, when accepted as true, they show the plausibility of his claim for relief. *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1949 (2009). Plaintiff must do more than plead facts that are "consistent with Defendants' liability" because that only shows the possibility, not the plausibility, of their entitlement to relief. *Id.* (internal quotations omitted).

## IV. DISCUSSION

### A. Discrimination in Violation of the ADA

Defendant maintains that Plaintiff fails to adequately allege discrimination in violation of the ADA. The ADA prohibits employers from discriminating against a qualified individual on the basis of his disability. 42 U.S.C. § 12112(a). Under the statute, a "disability" is "a physical or mental impairment that substantially limits one or more major life activities of such individual[.]" 42 U.S.C. § 12102(1)(A). The phrase "major life activities" includes working. *Id.* at (2)(A). With respect to working,

> [t]he term substantially limits means significantly restricted in the ability to perform either a class of jobs or a broad range of jobs in various classes as compared to the average person having comparable training, skills and abilities. The inability to perform a single, particular job does not constitute a substantial limitation in the major life activity of working.

29 C.F.R. § 1630.2(j)(3)(1).

Defendant argues that Plaintiff fails to allege any facts to plausibly suggest that his impairment significantly limits the major life activity of working. Plaintiff does allege that he has suffered for many years from anxiety, panic disorder with agoraphobia, and depression, and that

5

these impairments have affected his ability to work. Plaintiff further alleges that Defendant regarded him as disabled as evidenced by the adjustment of his work schedule and his job reassignment, however, Plaintiff does not explain what that reassignment was, how his work schedule was altered or how his impairments affected his ability to work at his job. He simply makes the conclusory statement that his disability substantially impaired his ability to work, and that with reasonable accommodation, which he claims he was denied, he would have been able to perform his job. Without any supporting allegations, Plaintiff's ADA claim does not rise above the speculative level required to overcome a motion to dismiss.

## B. Retaliation in Violation of the ADA

Defendant argues that Plaintiff fails to properly plead retaliation in violation of the ADA. In order to properly plead such a claim, Plaintiff must allege that "(1) he engaged in statutorily protected expression; (2) he suffered an adverse action; and (3) there is a causal link between the protected expression and the adverse action." *Roth v. Lutheran General Hosp.*, 57 F.3d 1446, 1459 (7th Cir. 1995). Defendant maintains that Plaintiff's factual allegations in Plaintiff's initial, First Amended and Second Amended complaints, when considered in their totality, fail to establish that he engaged in an activity protected by the ADA.

In his Second Amended Complaint, Plaintiff alleges that he was terminated immediately following the disclosure of his disability, and that he was therefore unlawfully retaliated against because of his disability. In his response to Defendant's motion, Plaintiff specifies that his retaliation claim is based on his response to Kent's write up that he felt that his rights were being

6

violated and would consider seeking the assistance of the EEOC or IDHR.[1]  "A complaint about [] disability discrimination to supervisors is a protected activity[.]" *Burks v. Wisconsin Dept. Of Transp.*, 464 F.3d 744, 758 (7th Cir. 2006); *Casna v. City of Loves Park*, 574 F.3d 420, 427 (7th Cir. 2009) ("an informal complaint may constitute protected activity for the purposes of retaliation claims.").

Defendant argues that the allegations of retaliation contained in the Second Amended Complaint are inconsistent with allegations in the initial complaint that the Defendant "intentionally terminated the Plaintiff because he indicated he would seek the assistance of the EEOC or IDHR as a result of disciplinary action taken against him in response to his complaints of sexual harassment[;]" as well as in the First Amended Complaint that Defendant "terminated Plaintiff immediately following his complaints about sexual harassment, and therefore retaliated against Plaintiff for engaged [sic] in the federally protected conduct of opposing and objecting to sex discrimination." But an amended pleading supersedes prior pleadings, which are, in effect, withdrawn. *188 LLC v. Trinity Industries, Inc.*, 300 F.3d 730, 736 (7th Cir. 2002) (citations omitted). As such, I will not consider them. Even if I were to do so, they would not be dispositive. Plaintiff's allegations that he threatened to go to the EEOC or IDHR on the basis of harassment do not preclude the current suggestion that he was also going to report some kind of disability discrimination.

Plaintiff alleges that Kent interrogated him about his health conditions, told Plaintiff to keep him informed about these conditions, and the next day Kent wrote Plaintiff up for an

---

[1] The allegation that Plaintiff expressed to Kent that he felt his rights were being violated and threatened to go to the EEOC and IDHR are incorporated by reference into Plaintiff's ADA retaliation claim.

7

incident for which he disclaims responsibility. In response to the write up, Plaintiff expressed that he felt his rights were being violated and he would consider going to the EEOC and IDHR. The following day, Plaintiff was terminated. Plaintiff's allegations include facts supporting an activity protected under the ADA, and Defendant's motion to dismiss this claim is denied.[2]

## V. CONCLUSION

For the foregoing reasons, Defendant's motion to dismiss is granted as to Plaintiff's ADA discrimination claim and denied as to Plaintiff's ADA retaliation claim.

ENTER:

James B. Zagel
United States District Judge

DATE: March 25, 2010

---

[2] Plaintiff's retaliation claim can survive even though he has failed to adequately plead a disability "because the ADA's prohibition against retaliation extends to all individuals attempting to raise a good faith claim under the statute." *Sanchez v. City of Chi.*, No. 05 C 6801, 2007 WL 647485, at *8 (N.D. Ill. Feb. 28, 2007).