UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

RYAN LORD,
    Plaintiff,

v.

HIGH VOLTAGE SOFTWARE, Inc.,

    Defendant.

No. 09 C 4469
Judge James B. Zagel

## MEMORANDUM OPINION AND ORDER

Plaintiff Ryan Lord ("LORD") has brought this action against Defendant High Voltage Software ("HVS") for sexual discrimination in violation of Title VII of the Civil Rights Act of 1964 ("Title VII") and intentional retaliation under both Title VII and the Americans with Disabilities Act ("ADA"). The matter now comes before the Court on cross motions for summary judgment. Defendant moves for summary judgment on all counts. Plaintiff moves for partial summary judgment on his Title VII retaliatory firing claim.

## BACKGROUND

LORD is a resident of Hoffman Estates. HVS is a video game development corporation organized under the laws of Illinois. LORD is the former employee of Defendant. LORD, a heterosexual male, started working at HVS in September, 2006. LORD avers to have suffered from, and been treated for, a litany of anxiety and depressive mental disabilities.

In January of 2007, LORD was teased by coworkers, including his immediate supervisor JOSHUA VANVELD ("VANVELD"). The teasing, taken as a whole, insinuated that Lord was giving a female audio engineer special attention because he was attracted to her. This teasing included claims that LORD had caught the "Audio Bug" as well as vulgar accusations and rhetorical

1

questions which, presumably, were intended to humiliate Lord. In April of 2007, LORD spoke with VANVELD's supervisor, CHAD KENT ("KENT"), to complain about this teasing. In this meeting, LORD made no claim that this teasing was specifically motivated by his sex or disability.

On July 18, 2007, LORD was poked in the buttocks by a coworker NICK REIMER. The following day, July 19, LORD informed KENT about this unwelcome contact. Again, LORD made no claim that REIMER was motivated by his sex or disability. During the next work week, starting on July 23, LORD was touched three more times by REIMER in either the buttocks or between his legs; each time LORD told REIMER not to touch him. During this time KENT was out of the office.

The following Monday, July 30, LORD questioned and interviewed other employees who witnessed the touching. KENT saw this questioning and asked LORD to step outside for a private conversation. The two spoke about several topics, including LORD's health and past medical appointments. After this conversation with KENT, LORD spoke with MAGGIE BOHLEN ("BOHLEN"), a Human Resources ("HR") official, about the touching. BOHLEN asked LORD to reduce his concerns regarding the touching to an email. BOHLEN said she would speak to KENT and JOHN KOPECKY ("KOPECKY"), HVS's President, about the subject. During this conversation and the follow up email with BOHLEN, LORD, again, made no suggestion that REIMER's unwelcome contact was motivated by his sex or disability.

The following day, July 31, LORD was given a disciplinary write up from KENT. Plaintiff responded to the write up in writing and stated that he (1) felt his rights were violated; and (2) was "close to filing a complaint" with the Illinois Department of Human Rights ("IDHR") and the Equal Employment Opportunity Commission ("EEOC"). In this email, though he clearly considered himself a victim of "sexual harassment," LORD made no assertion that the alleged

harassment was because of his sex or disability. KENT's write up was later withdrawn and no disciplinary action was taken.

The following day, August 1, LORD was terminated. The "true" reasons for the firing are disputed by the parties. HVS's termination notice states, and Defendant maintains, that LORD was terminated for insubordination for failure to follow through on the directive given to him in his performance goals report. Plaintiff insists his termination was retaliation for opposing his alleged sexual harassment and threatening to go to the IDHR and EEOC.

## DISCUSSION

The Court now considers Defendant's motion for summary judgment. Summary judgment shall be granted when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). Where genuine issues of material fact remain, summary judgment is inappropriate, and an issue of material fact is "genuine" if there is sufficient evidence favoring the non-moving party for a jury to return a verdict for that party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 243, 106 S. Ct. 2505, 2507, 91 L. Ed. 2d 202 (1986).

In considering a motion for summary judgment, the Court "must construe all facts and draw all reasonable inferences in the light most favorable to the nonmoving party." *Hilt-Dyson v. City Of Chicago*, 282 F.3d 456, 462 (7th Cir. 2002). However, the non-moving party "may not rest on its pleadings, but must affirmatively demonstrate, by specific factual allegations, that there is a *genuine* issue of material fact that requires trial." *Beard v. Whitley County REMC*, 840 F.2d 405, 410 (7th Cir.1988) (emphasis in original). To this end, the non-moving party must "specifically identify[] the relevant evidence of record" and not require the court "to scour the

record in search of a genuine issue of triable fact." *Richards v. Combined Ins. Co. of America*, 55 F.3d 247, 251 (7th Cir.1995). The Court will "rely on the nonmoving party to identify with reasonable particularity the evidence that precludes summary judgment." *Id.*

I.  Sexual Discrimination – Title VII

   A.  The relevant substantive law at issue

Plaintiff brings a claim of Title VII hostile work environment same-sex sexual harassment arising out of (1) the comments of VANVELD and other coworkers regarding LORD's "Audio Bug," and (2) the unwelcome physical contact from REIMER, a male officemate and acquaintance of LORD's. To prevail, Plaintiff must demonstrate that "(1) [he] was subjected to unwelcome sexual harassment in the form of sexual advances, requests for sexual favors or other verbal or physical conduct of a sexual nature; (2) the harassment was based on [his] sex; (3) the sexual harassment had the effect of unreasonably interfering with [his] work performance in creating an intimidating, hostile, or offensive working environment that seriously affected her psychological well-being; and (4) a basis for employer liability exists." *Durkin v. City of Chicago*, 341 F.3d 606, 611 (7th Cir. 2003).

<div style="text-align:center">***"Because of Sex"***</div>

The second element – that the conduct was "based on" or occurred "because of [Plaintiff's] sex" – has been squarely addressed in the context of same-sex workplace sexual harassment by the Supreme Court. *Oncale v. Sundowner Offshore Servs., Inc.*, 523 U.S. 75, 118 S. Ct. 998, 140 L. Ed. 2d 201 (1998). To support a same–sex sexual harassment claim, Plaintiff "must always prove that the conduct at issue was not merely tinged with offensive sexual connotations, but actually constituted '*discrimina[tion]* ... because of ... sex.'" *Id.* at 81 (emphasis in original). The Court makes clear that Title VII is not meant to establish a "civility

code," and that neither the mere presence of *sexual content within,* nor a victim's *sexuality incidental to,* the conduct is sufficient to establish discriminatory sex-based harassment. *Id.* at 80. To be clear, "sexual content or connotations of those statements or conduct will not alone raise a question of fact as to the sex-based character of the harassment." *Shepherd v. Slater Steels Corp.*, 168 F.3d 998, 1011 (7th Cir. 1999).

The two most common manifestations of sex-discriminatory motivation are (1) sexual interest and (2) sexually disparate treatment. *Oncale*, 523 U.S. at 80. However, these examples are not exhaustive. The "inference that the sexual overlay was not incidental … cannot be reduced to rigid formulae" and is open to Plaintiff to demonstrate in context by any reasonable means of proof. *Shepherd*, 168 F.3d at 1009. To demonstrate sex discrimination, a Plaintiff "can either proceed directly, by presenting direct and/or circumstantial evidence on the issue of discriminatory intent, or indirectly, by utilizing the *McDonnell Douglas* [] burden-shifting method." *Wyninger v. New Venture Gear, Inc.*, 361 F.3d 965, 978 (7th Cir. 2004).

B. Application of the law

1. "Direct Method"

The sex-discriminatory inference is sensitive to context. *Shepherd*, 168 F.3d at 1010. Accordingly, it is worthwhile to note that all three of the alleged sex-harassers are men who worked alongside both men and women in HVS's mixed-gender office. Further, there are no facts averred which suggest the alleged harassers were sexually interested in Plaintiff,[1] or have ever openly expressed hostility toward men, as a class, in the workplace.[2]

---

[1] In his deposition Plaintiff was asked repeatedly if he thought his alleged harassers were gay, or bisexual, or otherwise attracted to him. Affirmative answers would have supported an inference of "sexual interest" sex-based discriminatory intent. However, Plaintiff responds to each question with uncertainty, equivocation, and rank speculation. Defense Exhibit 2, Deposition of Ryan Lord Day 2, p. 13-5 ("I don't know." "I really don't know." "I honestly would consider the possibility that he could be bisexual." "I did not believe him to be gay." "Not that I recall.").

[2] Plaintiff acknowledges that one of the alleged harassers would "make crude comments often about a lot of things"

From this infertile soil, Plaintiff does nothing to grow an inference of discriminatory intent. No direct evidence is presented in Plaintiff's favor and the circumstantial evidence weighs *against* a reasonable inference of sex-discriminatory intent. Plaintiff's difficulty in supporting an inference of sex-based discriminatory intent is best illustrated when he is asked, point blank, if he thought VANVELD was "was treating [him] different because of [his] gender with [his] comment." Defense Exhibit 1, Deposition of Ryan Lord Day 1, p. 196. Plaintiff seems confused by the question, as though he had never considered such a possibility, and responds with his own question: "Is [VANVELD] saying that to me because I'm male?" *Id.* at 197. A single deposition anecdote is obviously not the sole consideration upon which the Court rests its decision. Indeed, Plaintiff's claim is injured more by what he has *not* said than anything he actually stated. However, the Court finds Plaintiff's bewilderment and inability to answer such an essential question emblematic of the deficiency of his Title VII claim.

The closest Plaintiff comes to affirmatively addressing the topic is to claim that Defendant has "failed to demonstrate" that the alleged harassers harassed female employees in the same particular ways they allegedly harassed Plaintiff. From this dubious premise, Plaintiff concludes that the alleged harassment was "because of" Plaintiff's sex. Plaintiff's Response, p. 10-11. This argument is a rhetorical distraction that ignores Plaintiff's burden.

As a preliminary matter, the mere *indeterminacy* of a fact which would detract from a proposition does not provide affirmative evidence for that proposition. Assuming, *arguendo*, Defendant *had* "failed to demonstrate" sexually-disparate treatment occurred, by itself, does not demonstrate that sexually-disparate treatment did occur. This is a common variant of the *argumentum ad ignorantiam* and will not be given any probative weight by the Court. More

---

but claims that the "harassment part were the things which were being directed at me personally." Defense Exhibit 1, Deposition of Ryan Lord Day 1, p. 214.

importantly, by adopting this stance, Plaintiff shirks what is ultimately his burden. Plaintiff must *affirmatively demonstrate*, by specific factual allegations, that there is a genuine issue of material fact – whether the conduct was motivated by sex-discrimination – such that a trial is necessary. Merely pointing at the defense and claiming "they haven't disproven my burden" will not suffice.

As a more general matter, under the circumstance at hand, the Court cannot permit factual silence to create an inference that LORD was targeted *because of* his maleness. Indeed, both the content and context of the alleged harassers' conduct suggests their animus towards Plaintiff was premised on his particular personal identity, rather than his sexual class identity of "man." The record strongly suggests that the alleged harassment occurred not because the alleged harassers were antagonistic towards *men* but because they were antagonistic towards *him*. Plaintiff fails to offer *any* affirmative demonstration that the alleged harassment was directed towards him *vis a vis* his maleness. Because of this, there is no way for the Court to reach an inference of Title VII sex-discrimination without accepting a dubious and expansive premise - that harassment interactions between individuals are inherently animated by the class-identities of those individuals. This is a dangerous reading of Title VI which decays the meaning and purpose of the statute. Further, such a reading would make future appraisal of the "because of" element almost non-justiciable. As such, it is rejected.

2. "Indirect Method"

Having considered the direct method, the Court now turns to the indirect method of demonstrating sex-based discrimination. Plaintiff can establish a burden-shifting prima facie case of sex discrimination by showing that 1) they belong to the relevant statutorily protected class; 2) they performed their job satisfactorily; 3) they suffered an adverse employment action; and 4)

7

they were treated less favorably than similarly situated employees *not* within that protected class. *Hughes v. Brown*, 20 F.3d 745 (7th Cir.1994); *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973).[3] It is important to remember that, even within the familiar *McDonnell Douglas* "burden shifting" system, "[t]he ultimate burden of persuading the trier of fact that the Defendant intentionally discriminated against the plaintiff remains at all times with the plaintiff." *Texas Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 253, 101 S. Ct. 1089, 1093, 67 L. Ed. 2d 207 (1981).

Plaintiff's aforementioned claim that Defendant has not demonstrated that the alleged harassers routinely harassed female coworkers in that same way as Plaintiff may seem relevant here, but it is not. Plaintiff's inability to establish the necessary antecedent - a prima facie case of sexual discrimination – makes any consideration of the defense unnecessary. Putting aside whether Plaintiff belongs to the relevant statutory class or performed his job satisfactorily, Plaintiff has not provided any evidence which *affirmatively* establishes the disparate treatment of similarly-situated female employees. Plaintiff's avers no facts that women were treated more favorably by VANVELD, REIMER, or any other alleged harasser but instead merely points out that the defense hasn't proven the opposite. This indeterminacy, in the mixed gender context of HVS, is insufficient to shift the burden upon the defendant or raise an issue of material fact.

C. Conclusion

In sum, the Court agrees that a "central point in Defendant's motion for summary judgment [was] completely ignored by the plaintiff: there is absolutely no evidence from which it

---

[3] Should Plaintiff establish a prima facie case, then the burden shifts to Defendant to articulate a legitimate, nondiscriminatory reason for his termination "which if believed by the trier of fact, would support a finding that unlawful discrimination was not the cause of the employment action." *Petts v. Rockledge Furniture LLC*, 534 F.3d 715, 725 (7th Cir. 2008) (quoting *Brown v. Illinois Dep't of Natural Res.*, 499 F.3d 675, 681 (7th Cir. 2007)). If Defendant meets this burden, then the burden returns to Plaintiff to prove that the proffered reason is a pretext for sex discrimination. *Id.*

is objectively reasonable to conclude Reimer's conduct was because of Plaintiff's sex." Defendant's Reply, p. 9. The same is true in regard to the "Audio Bug" comments. Because Plaintiff has not averred any facts under the direct method from which a reasonable jury could conclude that sex-based discrimination – "discrimination against men" – was the animating impulse behind the alleged harassment, nor made a prima facie case under the indirect method, it is unnecessary to consider whether a genuine issue of material fact exists for the remaining elements of Plaintiff's Title VII claim. Defendant's motion for summary judgment is granted.

II. Retaliatory Firing – Title VII, Sexual Discrimination

    A. The relevant substantive law at issue

To prevail on a claim of retaliatory firing, under Title VII, Plaintiff must demonstrate "(1) [he] engaged in statutorily protected expression; (2) [he] suffered an adverse action at the hands of [his] employer; and (3) there was a causal link between the two." *Pickett v. Sheridan Health Care Ctr.*, 610 F.3d 434, 441 (7th Cir. 2010) (quoting *Fine v. Ryan Int'l Airlines*, 305 F.3d 746, 751-52 (7th Cir.2002)). Statutorily protected activity generally consist of either (1) *opposition to* any act or practice that is unlawful under Title VII; or (2) *participation within* in an investigation, proceeding, or hearing under Title VII. *See* 42 U.S.C.A. § 2000e-3.

    B. Application of the law

Plaintiff proceeds under both "opposition" and "participation" theories, averring that Plaintiff's numerous complaints to HVS's HR department satisfy the "opposition" requirement and that Plaintiff's threat of being "this close" to filing a complaint with the IDHR or EEOC satisfies the "participation" requirement. Plaintiff's Response, p. 13.

Plaintiff correctly points out that he need not succeed on his underlying sexual harassment claim to advance his retaliation claim under Title VII. *See Nelson v. Realty*

9

*Consulting Servs., Inc.*, 431 F. App'x 502, 506 (7th Cir. 2011). However, the specific threshold that underlying sexual harassment claim must reach is worth review. "A Plaintiff filing a retaliation claim need not have opposed an action that *in fact* violated Title VII in order to win this claim; we require only that [he] had a good faith, objectively reasonable belief that the action [he] opposed was a violation." *Nelson*, 431 F. App'x at 506 (emphasis in original). This standard is meant to "weed out claims that are completely groundless because they rest on facts that 'no reasonable person possibly could have construed as a case of discrimination.'" *Id*.

To achieve "objective reasonability," a plaintiff's complaint must address conduct "which falls into the category of conduct prohibited by the statute" and "must involve discrimination that is prohibited by Title VII." *Magyar v. Saint Joseph Reg'l Med. Ctr.*, 544 F.3d 766, 771 (7th Cir. 2008); *Hamner v. St. Vincent Hosp. & Health Care Ctr., Inc.*, 224 F.3d 701, 708 (7th Cir. 2000). The plaintiff's allegations "cannot be without legal foundation, but must concern the type of activity that, under some circumstances, supports a charge of sexual harassment." *Hamner*, 224 F.3d at 707. This Circuit has made explicitly clear that this "good faith, objectively reasonable belief" standard applies to "protected conduct" whether rooted in "complaint" or "participation." *Mattson v. Caterpillar, Inc.*, 359 F.3d 885, 891 (2004) ("We believe that the same threshold standard should apply to both opposition and participation clause cases.").

The Court does not doubt that LORD had a good faith *subjective* belief that he was being unlawfully discriminated against. His anguish seems sincere and the substance of the underlying conduct could reasonably fall into a subjective or popular conception of what constitutes "sexual harassment" -unwelcome touching or comments of a sexual nature. However, even a generally held public conception is simply not the same as the objective legal conception of "sexual

10

harassment" as defined in Title VII and, in the Seventh Circuit, the latter is required. *Nelson*, 431 F. App'x at 506.

For a plaintiff's expression to be statutorily protected under Title VII's retaliation provision, the plaintiff must have an "objectively reasonable" belief that he or she has opposed an unlawful practice. *Hamner*, 224 F.3d at 707-08. To be "objectively reasonable," the conduct opposed, at least under some circumstances, must actually be proscribed by Title VII. *Id.*

As mentioned above, a review of both the briefs at hand and the relevant record shows Plaintiff's failure to aver any facts from which a reasonable person could, within context, infer that the conduct underlying Plaintiff's claims was *discriminatory* for purposes of Title VII – undertaken primarily "because of" his sexual class identity as a man. Here, Plaintiff's underlying claim fails not merely as a matter of degree but as a matter of categorical insufficiency. Because of this, Plaintiff cannot claim an "*objectively* reasonable belief" that the alleged harassment was unlawful under Title VII. Accordingly, Plaintiff's (1) complaint or (2) threat of participation cannot be elevated to "protected activity."

  C. Conclusion

Because Plaintiff has not engaged in protected conduct, the Court need not consider causality. Defendant's motion for summary judgment against Plaintiff's retaliatory firing claim is granted.

III. Retaliatory Firing – ADA, Disability Discrimination

  A. The relevant substantive law at issue

An ADA retaliatory firing claim is "materially identical" to a Title VII claim and requires Plaintiff to prove (1) that he engaged in statutorily protected activity; (2) that he suffered an adverse employment action; and (3) that there is a causal connection between the two events.


*Anderson v. The Foster Grp.*, 521 F. Supp. 2d 758 (N.D. Ill. 2007); *Contreras v. Suncast Corp.*, 237 F.3d 756, 765 (7th Cir.2001). A Plaintiff must offer either direct evidence of retaliation, or proceed under a burden-shifting method. *Smart v. Ball State Univ.*, 89 F.3d 437, 440 (7th Cir.1996). Here, direct evidence is, unsurprisingly, absent, so the Court considers Plaintiff's ADA retaliatory firing claim under the *McDonnell Douglas* framework.

B. Application of the law

As a preliminary matter, Plaintiff's alleged disability and protected conduct in reference to that disability are barely addressed within the voluminous briefing schedule of both parties on their cross motions for summary judgment. The topic is most substantively addressed in Plaintiff's seconded amended complaint which avers that (1) Plaintiff suffers from a host of disabling maladies (anxiety, panic disorder with agoraphobia, and depression) which affect his ability to work; (2) Defendant, specifically through its agent KENT, was aware of and acknowledged these impairments around the time of Plaintiff's termination; and (3) Defendant accommodated Plaintiff's disability by adjusting his work schedule and reassigning his job.

No matter how generous a light is cast upon these averments, the Court cannot see anything faintly resembling "protected activity" under the ADA. Though the record is saturated with complaints about workplace sexual harassment concerns, Plaintiff has not averred that he formally complained to HVS about his *disability*. It is common sense that "in order to have a retaliation claim under the ADA, Plaintiff must have complained about *disability discrimination*." *Hardwick v. John & Mary E. Kirby Hosp.*, 860 F. Supp. 2d 641, 650 (C.D. Ill. 2012) (emphasis added). Further, Plaintiff's sole threat of participation in an IDHR or EEOC process was solely concerned with the alleged sexual harassment. Merely averring that a Plaintiff was disabled and held a position at a firm is simply not enough to raise an issue of material fact

as to whether a Plaintiff engaged in "protected activity" under the ADA. The simple fact is that "[a]n employer cannot retaliate if there is nothing for it to retaliate against." *Durkin*, 341 F.3d at 615.

Even if we assume, *arguendo*, that Plaintiff had engaged in protected action in reference to his disability, Plaintiff's proof of causality between this protected action and his termination is extremely wanting. Again, all of Plaintiff's numerous complaints and singular participation threat concerned his alleged sexual harassment. Under the facts averred, Plaintiff's disability – a susceptibility to panic attacks and other anxiety related issues – did not seem to be discussed, nor even contemplated, by any of the parties involved in the termination process. Even in light of the "suspicious timing" of the July 30 conversation between Kent and Plaintiff, without anything more, a causal inference connecting the termination and Plaintiff's protected conduct would be largely an invention of the Court.

Because Plaintiff's averred facts do not raise a triable issue of fact concerning protected conduct or causality, summary judgment is granted for Defendant over Plaintiff's ADA retaliatory firing claim.

## CONCLUSION

For the reasons stated herein, Plaintiff's Motion for Summary Judgment is DENIED and Defendant's Motion for Summary Judgment is GRANTED.

ENTER:

James B. Zagel
United States District Judge

DATE: November 13, 2013

13