# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| RYAN LORD, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | No. 09-CV-04469 |
| ) | |
| HIGH VOLTAGE SOFTWARE, ) | Judge John J. Tharp, Jr. |
| INC. ) | |
| ) | |
| Defendant. ) | |

## MEMORANDUM OPINION AND ORDER

Upon winning its motion for summary judgment, Defendant High Voltage Software moved for sanctions and attorney's fees pursuant to Rule 11, Rule 54(d), 28 U.S.C. § 1927, and 42 U.S.C. § 2000e-5(k) and § 12205(b). It argues that Plaintiff Ryan Lord's claims never had any basis in fact or law (despite a Seventh Circuit opinion dissenting from the grant of summary judgment on one of the counts) and thus were frivolous. The Court disagrees as to the Title VII claims, but grants the motion for sanctions as to the ADA retaliation claim.

## BACKGROUND

This case has been heavily litigated over the last seven and a half years. Intrigued readers can consult the previous opinions,[1] but this Court discusses only the facts necessary to resolve the present motions. Plaintiff Ryan Lord was an associate producer at Defendant High Voltage Software ("HVS") when he was the subject of some harassment from his coworkers. This harassment included teasing that he was attracted to a female coworker as well as at least four instances in which he was touched on his buttocks or in between his legs by a male coworker in a

---

[1] *See Lord v. High Voltage Software, Inc.*, 839 F.3d 556 (7th Cir. 2016) (appeal and dissent); *Lord v. High Voltage Software, Inc.*, No. 09 C 4469, 2013 WL 6009246, at *1 (N.D. Ill. Nov. 13, 2013) (summary judgment); *Lord v. High Voltage Software, Inc.*, No. 09 CV 4469, 2010 WL 1229428, at *1 (N.D. Ill. Mar. 25, 2010) (motion to dismiss).

short period of time. *See Lord v. High Voltage Software, Inc.*, 2013 WL 6009246, at *1. Lord first complained to a human resources manager that he was being sexually harassed by the teasing; she responded that the conduct did not amount to sexual harassment but directed Lord to report any further incidents of harassment "immediately." The unwanted touching occurred about a month later, but Lord did not report it immediately. Two days after he did report the further harassment, Lord had a heated exchange with a supervisor about an unrelated incident and was fired. *Lord v. High Voltage Software, Inc.*, 839 F.3d at 560-61. Lord then filed a complaint with the EEOC and received a right to sue letter. *Id.* at 561.

Lord originally filed this lawsuit in July 2009, when he sued HVS claiming sex discrimination, disability discrimination, retaliation under Title VII and the Americans with Disabilities Act ("ADA"), state law retaliatory discharge, and violation of the Illinois Human Rights Act. *See* Compl., ECF No. 1. HVS moved to dismiss, and Lord in response filed an amended complaint, which dropped the two state law claims and set out the two retaliation claims separately. After HVS sent a Rule 11 letter warning that the ADA retaliation claim was legally deficient (but before it filed any sort of motion to dismiss the amended complaint), Lord filed a second amended complaint, which included the same claims but clarified a few facts, including the relationship between his claimed disability and his discharge. HVS again moved to dismiss the complaint in its entirety.

Judge Zagel, to whom this case was originally assigned,[2] granted HVS's renewed motion to dismiss in part, dismissing the ADA discrimination claim but leaving the ADA retaliation claim and both Title VII claims. *See Lord v. High Voltage Software, Inc.*, 2010 WL 1229428, at *3-4. Among other arguments, HVS contended in its motion to dismiss that Lord's allegations

---

[2] This case was transferred to this Court's docket when the appellate process was completed, as Judge Zagel had since taken senior status.

regarding why he was fired in the second amended complaint were inconsistent with his allegations in the first two complaints. Judge Zagel found, however, that the second amended complaint operated to withdraw the prior complaints, and that regardless the inconsistency was "not dispositive" of the ADA retaliation claim. *Id.*

The case then proceeded through discovery, which was quite lengthy. Both sides filed motions to compel with varying success (one was dropped, another was granted in part, another was denied). S*ee* ECF No. 67, 75, 80. Eventually, HVS filed for summary judgment on all claims while Lord filed for partial summary judgment on his Title VII claims. At some point during the run up to, or during the briefing of, the motions for summary judgment, HVS and Lord's counsel seemed to reach an agreement that the ADA retaliation claim was not meritorious. *See* Def.'s Ex. 8, ECF No. 128-8. Lord did not file anything formally withdrawing the claim, but did not argue the claim during the summary judgment briefing. After noting that the ADA retaliation claim was "barely addressed within the voluminous briefing," Judge Zagel granted summary judgment to HVS on that claim. *Lord v. High Voltage Software, Inc.*, 2013 WL 6009246, at *6. Lord did not argue the ADA decision was erroneous when the case was on appeal in the Seventh Circuit, which mentions the ADA claims only in the context of the contents of the initial complaint. *See Lord v. High Voltage Software, Inc.*, 839 F.3d 556 at 561.

The district court granted summary judgment for HVS on both Title VII claims. On appeal, the Seventh Circuit affirmed, although Judge Rovner dissented regarding the Title VII retaliation claim. Judge Rovner argued that Lord had presented sufficient facts to survive summary judgment because the parties agreed that he was terminated "based on his report of the harassment to his employer." *Id.* at 566 (Rovner, J., dissenting).

3

**DISCUSSION**

Currently before the Court are HVS's motions for sanctions and attorney's fees. Although it brings its claims under five different rules and statutes,[3] the core of all the claims is essentially similar: whether the plaintiff pursued a frivolous claim. *See Fred A. Smith Lumber Co. v. Edidin*, 845 F.2d 750, 752 (7th Cir. 1988) ("the most important purpose of Rule 11 sanctions is to deter frivolous litigation and the abusive practices of attorneys"), *Christiansburg Garment Co. v. Equal Employment Opportunity Comm'n*, 434 U.S. 412, 421 (1978) (attorney's fees may be awarded under civil rights statutes pursuant to Rule 54(d) "upon a finding that the plaintiff's action was frivolous, unreasonable, or without foundation, even though not brought in subjective bad faith"); *Grochocinski v. Mayer Brown Rowe & Maw, LLP*, 719 F.3d 785, 799 (7th Cir. 2013) ("Sanctions against counsel under 28 U.S.C. § 1927 are appropriate when 'counsel acted recklessly, counsel raised baseless claims despite notice of the frivolous nature of these claims, or counsel otherwise showed indifference to statutes, rules, or court orders.'"). Here, although Plaintiff's counsel should have addressed more forthrightly the weaknesses of Lord's Title VII claims, the court does not find those claims to have been frivolous. The ADA retaliation claim, however, appears to never have had any factual basis and was, for that reason, frivolous.

**A. Title VII Claims**

HVS argues first that Lord's claims were legally and factually unsound. An attorney may not advance a claim that "is unwarranted by existing law or has no reasonable basis in fact." *Fabriko Acquisition Corp. v. Prokos*, 536 F.3d 605, 610 (7th Cir. 2008). Rule 11 clarifies that a legal argument is allowed if it is "warranted by existing law" or presents a "nonfrivolous

---

[3] The claims are brought under Rule 11, Rule 54(d) as authorized in Title VII and the ADA (42 U.S.C. § 2000e-5(k) and 12205(b)), and 28 U.S.C. § 1927.

argument for extending, modifying, or reversing existing law or for establishing new law." Fed. R. Civ. P. 11(b)(2). Lawyers are expected to make reasonable inquiries into governing law and make a reasonable inquiry into the facts. *See Raymond Prof'l Group v. William A. Pope Co. (In re Raymond Prof'l Group, Inc.),* 420 B.R. 420, 462 (Bankr. N.D. Ill. 2009). "If a competent attorney would find no basis for a legal argument, then it does not interfere with zealous advocacy to penalize the repetitious assertion of that argument." *In re TCI, Ltd.*, 769 F.2d 441, 447 (7th Cir. 1985).

Initially, HVS argues that Lord failed to acknowledge controlling law because the Supreme Court has said that "simple teasing or roughhousing among members of the same sex" is not cognizable under Title VII. *See Oncale v. Sundowner Offshore Servs.*, 523 U.S. 75, 82 (1998). That reading, however, ignores the context in which that phrase is used:

> The real social impact of workplace behavior often depends on a constellation of surrounding circumstances, expectations, and relationships which are not fully captured by a simple recitation of the words used or the physical acts performed. Common sense, and an appropriate sensitivity to social context, will enable courts and juries to distinguish between simple teasing or roughhousing among members of the same sex, and conduct which a reasonable person in the plaintiff's position would find severely hostile or abusive.

*Id.* at 81-82. That is to say, whether or not specific conduct violates Title VII is a fact-specific inquiry that examines the totality of the circumstances. Thus, a lawyer should not be sanctioned for using discovery to investigate all the circumstances (which may themselves be susceptible to multiple interpretations). Furthermore, the Court finds that Lord's allegations of repeated sexual harassment by a coworker are not so insufficient as to warrant sanctions merely because they bear some resemblance to cases that were not successful. *See Goldberg v. 401 N. Wabash Venture LLC*, No. 09 C 6455, 2013 WL 5376556, at *6 (N.D. Ill. Sept. 25, 2013) ("failing to

5

ultimately prevail does not equate to bad faith or mean that plaintiff's theory of liability was implausible").

HVS then argues that even if *Oncale* and its progeny did not completely foreclose liability, Lord's counsel should have known there was no factual basis because Lord failed to satisfactorily answer a question in his deposition about how his treatment was related to his gender. *See* Def.'s Mot. at 11, ECF No. 133. The Court thinks this more accurately reflects a layman's confusion about the connection between sexual harassment and gender. Even Ann Hopkins, the plaintiff in the landmark sexual discrimination case of *Price Waterhouse v. Hopkins*,[4] did not "understand what happened to me" until a social scientist testified at trial and connected Hopkins' treatment to her gender. *See* GILLIAN THOMAS, BECAUSE OF SEX: ONE LAW, TEN CASES, AND FIFTY YEARS THAT CHANGED AMERICAN WOMEN'S LIVES AT WORK 137 (2016). This is not a case in which a plaintiff knew a fact that would make him ineligible for coverage under a statute and concealed it. *See, e.g., Fernandez v. Galen Hosp. Illinois, Inc.*, No. 96 C 2578, 1997 WL 675042, at *4 (N.D. Ill. Oct. 28, 1997) (pursuing age discrimination claim after comparator was revealed to be older than plaintiff). Lord and his attorney did not misrepresent the facts of his claims, nor did those facts plainly preclude his claims, even if they faced an uphill battle. See *Lord*, 839 F.3d at 562 (denying Lord's sexual harassment claim because conduct at issue "was not *so* explicit or *patently* indicative" of sexual intent as to warrant inference that it was based on his gender) (emphasis added). Lord's harassment claim depended on the strength of that inference; he badly misjudged it, but his claim that sexual horseplay by another male was directed to him because of his gender was not so farfetched as to be frivolous.

---

[4] 490 U.S. 228 (1989).

HVS originally also argued that the Title VII retaliation claim was frivolous. Given Judge Rovner's considered and thorough dissent arguing that the Title VII retaliation claim was sufficient to go to trial, the Court finds the retaliation claim was not frivolous. Although it is possible for a dissent to overlook a flaw so fatal that the claim could still merit sanctions, that is not the case here. *See Le Beau v. Libbey-Owens-Ford Co.,* 799 F.2d 1152, 1158 n.7 (7th Cir. 1986) ("We do not suggest, as the dissent assumes, that no suit that survives a motion for summary judgment can ever be found frivolous."). Judge Rovner's dissent is hardly frivolous; neither, then, is Lord's Title VII retaliation claim.

**B. ADA Claims**

The same cannot be said for Lord's ADA retaliation claim. HVS argues that the ADA claims, particularly the retaliation claim, were not supported by any evidence and therefore were frivolous. The Court agrees.

Initially, HVS relies on its argument that the second amended complaint contradicted the previous complaint, and therefore is evidence that Lord's counsel knew the claim was frivolous. Judge Zagel effectively addressed this argument at the motion to dismiss stage, when he found that the complaint stated a claim, ***even considering the inconsistency***. *Lord v. High Voltage Software, Inc.*, 2010 WL 1229428, at *4. Furthermore, the Court in reviewing the complaints notes that the retaliation claims were originally one count alleging both ADA and Title VII discrimination. After the failure to allege retaliation on the basis of disability was pointed out to Lord's counsel, she filed a new complaint which split the retaliation claims but included the Title VII sexual harassment language in both counts. The inclusion of Title VII language in the now-separate ADA retaliation count appears to have been nothing more than a careless error caused by overzealous use of copying and pasting language from elsewhere in the complaint. After

being alerted to this flaw, Lord's counsel filed a second amended complaint, which made the proper allegations regarding disability.

The contradictions in the complaint, however, are not the problem. The problem is whether the ADA claim ever had any basis in fact. According to the sanctions motion, HVS was required to spend an "extensive amount of time and effort" to understand "Plaintiff's claimed medical conditions and impairments." Sanction Mot. ¶ 19, ECF No. 128. It appears, however, that Lord never complained to HVS about disability discrimination or ill treatment because of any disability. Neither in response to summary judgment nor in response to HVS's motions for sanctions and fees has Lord or his lawyer submitted *any* evidence suggesting there was a good faith basis for asserting that Lord had been fired for conduct protected under the ADA.

The Court does not mean to suggest that Lord should have litigated the summary judgment motion. Rather, Lord's counsel should have made a pre-suit investigation into exactly what Lord had told his supervisors and why he was terminated. In order to comply with Rule 11, an attorney must have "made a reasonable inquiry into the facts" prior to filing suit. *Brown v. Fed'n of State Medical Bds.*, 830 F.2d 1429, 1435 (7th Cir. 1987). *See also Jimenez v. Madison Area Tech. College*, 321 F.3d 652, 656 (7th Cir. 2003) (attorney must certify that pleading are based on "knowledge, information, and belief, formed after an inquiry reasonable under the circumstances"). What Lord had told his supervisors, including whether he had taken any action that would qualify as protected activity under the ADA, was information entirely in Lord's possession. But so far as the record shows, Lord never complained that he was being discriminated against on the basis of any disability. And since Lord knew that, his attorney also knew or should have known.

"The burden of proof is on the Rule 11 fee opponent to establish objective reasonableness and adequate pre-filing investigation once a prima facie showing of sanctionable conduct has occurred." *Smart Options, LLC v. Jump Rope, Inc.*, No. 12 C 2498, 2013 WL 500861, at *3 (N.D. Ill. Feb. 11, 2013). Here, HVS has convincingly argued that Lord, and therefore Lord's counsel, knew that he had never complained about disability discrimination and thus could not have been retaliated against for making such a complaint. Not a single piece of evidence was ever presented (to HVS or the Court) suggesting Lord had been retaliated against in violation of the ADA. Therefore, in responding to HVS's sanctions motions, it was incumbent upon Lord's counsel to represent to the Court why she believed there was a good faith basis, after a reasonable investigation, to pursue the ADA retaliation claim.

Lord and his lawyer have presented no evidence that there was a good faith basis to pursue an ADA retaliation claim. Instead, Lord argues that he survived a motion to dismiss and then dropped the claim prior to summary judgment. Both of these arguments are flawed. First, it is axiomatic that a motion to dismiss takes as true all facts pled in the complaint. Thus, a facially valid complaint will survive a motion to dismiss regardless of whether it has any factual basis in reality. It is the attorney's responsibility to make a reasonable inquiry to determine whether, given the evidence currently in her possession, a good faith basis exists for making a claim in the complaint. A complaint that makes up facts is still sanctionable, even if it survives a motion to dismiss.

Next, Lord points out that he dropped the ADA retaliation claim. This is not entirely accurate. Lord's counsel evidently indicated in July 2013, prior to HVS's filing for summary judgment, that she *would* drop the ADA retaliation claim. She never filed any sort of dismissal on the docket, however. HVS therefore included argument (albeit, brief) on the ADA retaliation

claim, to which Lord did not respond, and Judge Zagel granted summary judgment. In and of itself, the Court agrees that opting to not respond to a claim (and therefore forfeiting all argument over it) on summary judgment rather than withdrawing it does not independently warrant sanctions.

The problem, however, is that an expensive process occurred in between those two stages: discovery. Lord's lawyer responded to HVS's Rule 11 letter (which covered in depth HVS's perceived deficiencies in both the Title VII and ADA claims) with vague platitudes like "a key component of this case" would be "born out in the upcoming depositions." *See* Scarry Letter, Feb. 15, 2013, ECF No. 128-4. Lord has never indicated, however, what information was gleaned in discovery that changed his (or his counsel's) opinion about the merit of the ADA retaliation claim. Instead, counsel asserts merely that there was a "lack of evidence" concerning the ADA claim. *See* Pl.'s Resp. to Sanction Mot. at 5, ECF No. 139. That much is incontestably true, but it was also something Lord and his attorney realized, or should have, before they filed the ADA retaliation claim. "[A]n attorney violates Rule 11 in maintaining a claim that is unwarranted by existing law or has no reasonable basis in fact" once it becomes clear the claim has no basis. *Fabriko Acquisition Corp. v. Prokos*, 536 F.3d 605, 610 (7th Cir. 2008). Without any evidence or argument that the claim was dropped shortly after discovery revealed it to be frivolous, the Court concludes Lord and his lawyer knew, or should have known, that the ADA retaliation claim had no basis in fact from the beginning.

The motion for sanctions specifically requests that sanctions be entered against Lord and his attorney. Rule 11(c) allows the Court to sanction "any attorney, law firm, or party that violated the rule or is responsible for the violation." Fed. R. Civ. P. 11(c)(1). A represented party may be held responsible for any Rule 11 violation unless the violation is "legal in nature." *Philos*

*Techs., Inc. v. Philos & D., Inc.*, 943 F. Supp. 2d 880, 886 (N.D. Ill. 2013). In this case it is objectively clear that both Lord and his counsel "should have known that his position [was] groundless" because there were no facts to support the ADA retaliation claim. *CUNA Mut. Ins. Soc'y v. Office & Prof'l Emples. Int'l Union, Local 39*, 443 F.3d 556, 560 (7th Cir. 2006). Thus, the Court holds Lord and his counsel jointly and severally liable for the sanctions imposed.

The Court recognizes that the purpose of Rule 11 is to sanction, not necessarily to compensate fully the opposing party. *Samuels v. Wilder*, 906 F.2d 272, 276 (7th Cir. 1990). Thus, the Court directs HVS to submit a list of expenditures which were ***directly and exclusively a result of the ADA retaliation claim***. To the extent that HVS can demonstrate a specific number of hours were spent on the ADA retaliation claim in drafting the motion to dismiss, for example, it may present that documentation. The Court anticipates, however, that the bulk of Defendant's submission will relate to the expenses of medical discovery as discussed in paragraphs 19-21 of its sanctions motion.

Having thus granted the motions for sanctions, the Court denies as moot the motion for attorney's fees as to the ADA retaliation claim. Because the Court is awarding HVS the fees attributable to the plaintiff's pursuit of a frivolous claim, it will receive all, or substantially all, of what would be otherwise recoverable under § 1927 or Rule 54(d). Furthermore, in the Court's judgment, it is the filing of a complaint with a claim that had no bearing in fact or law, rather than the specific conduct of the litigation, that was frivolous. *See id*. at 275 ("Section 1927 and Rule 11 are addressed to different conduct: the statute to prolonging litigation, and Rule 11 to particular filings.")

**C. Discovery Practice**

Finally, HVS faults Lord for "persist[ing] in bringing various discovery motions and motions for reconsideration" of those discovery motions. Def.'s Mot. at 12, ECF No. 128. Cross-referencing the docket entries listed by HVS, the objectionable conduct was: one motion for extension of time to complete depositions, one motion to compel (and to further extend time for depositions and sanction HVS), and one motion for reconsideration. The extensions of time to complete depositions were granted, the sanctions portion of the motion to compel and the motion for reconsideration were denied. Although these motions were doubtless an inconvenience to counsel and extended the discovery period, at least some of the motions had merit (some were granted, after all). In this Court's experience, one and a half denied discovery motions do not amount to vexatious litigation that merits sanction. *Compare Mustafa v. NSI Int'l, Inc.*, No. 15-CV-06997, 2016 WL 6778888, at *8 (N.D. Ill. Nov. 16, 2016) (court issued four orders for plaintiff to stop unnecessary filings, which numbered more than twenty); *Johnson v. Melton Truck Lines, Inc.*, No. 14 C 07858, 2016 U.S. Dist. LEXIS 136451, at *36 n.23 (N.D. Ill. Sep. 30, 2016) (noting Plaintiff's "myriad" filings, including seven in a two week period which contravened an explicit court order).

\* \* \*

The Court therefore finds that the Title VII claims, although not meritorious, were not so frivolous as to warrant sanctions and denies the motions as to those claims. Lord's failure to produce any evidence that there was ever a potential factual basis for the ADA retaliation claim, on the other hand, demonstrates that the ADA claim was frivolous from the outset. Thus, the Court grants the motion for sanctions in the amount of HVS's attorneys' fees and expenses that can be attributed exclusively to the ADA claim. Having already provided all the relief to which

HVS is entitled, the Court denies as moot the remainder of the motions for attorney's fees and sanctions.

Dated: March 30, 2017

John J. Tharp, Jr.
United States District Judge